**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| TITO E. MARRERO, | ) | CASE NO.  1:13-CV-216 |
| | ) | |
| Petitioner, | ) | JUDGE OLIVER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| BELMONT CORRECTIONAL | ) | |
| INSTITUTION, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Respondent. | ) | |
| | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).

Before the court is the petition of Tito E. Marrero, ("Marrero" or "Petitioner") for a writ of

habeas corpus filed pursuant to 28 U.S.C. § 2254.  Petitioner is in the custody of the

Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence

in the case of *State of Ohio v. Marrero*, Case No. 08-CR-75288 (Lorain County July 8,

2010). (Doc. No. 19-1 at Ex. 1.)  The State argues that Petitioner failed to file his

petition within the one-year statute of limitations applicable to federal habeas petitions.

(Doc. No. 19.)  For the reasons set forth below, Petitioner's § 2254 petition should be

DISMISSED.

## I.  Background

**A.    Relevant Factual Background**

The state appellate court reviewing Marrero's conviction and sentence noted the

following relevant facts:

> Police officers from the Lorain County Police Department
> developed an interest in an individual named Jose
> Rodriguez after receiving a tip that he was involved in drug
> trafficking. Physical surveillance, monitored phone calls, and

trash pulls at Rodriguez' residence all confirmed that he was involved in the drug trade. After conducting several months of surveillance, the police executed a search warrant at the residence, just after midnight on January 17, 2008. Marrero, Rodriguez' nephew, arrived at the residence shortly before the police entered. In searching the entire residence, the police opened Marrero's locked duffel bag and found cocaine inside of it. The officer who examined the bag commented upon its opening that the bag looked to contain "almost a key," meaning one kilogram of cocaine. Marrero corrected the officer, stating "[n]o, it's only about 14," meaning fourteen grams of cocaine. Marrero was handcuffed at the time he made the statement, but had not been read his *Miranda* rights.

On February 28, 2008, a grand jury indicted Marrero on the following counts: (1) trafficking in cocaine, in violation of R.C. 2925.01(A)(1); (2) possession of cocaine, in violation of R.C. 2925.11(A); and (3) possession of drug paraphernalia, in violation of R.C. 2925.14(C)(1). On Marrero's motion, the trial court ordered the unsealing of the search warrants upon which the police relied in this matter. On August 8, 2008, Marrero filed a motion to suppress, challenging the search of his duffel bag on the basis that none of the warrants authorized a search of his possessions. The trial court held a suppression hearing and later denied the motion on December 19, 2008.

Subsequently, the trial court allowed Marrero to act pro se, but ordered his former counsel to remain on the case in an advisory capacity. Marrero filed another motion to suppress the oral statement he made at the scene. The trial court agreed to consider the motion and held an additional suppression hearing, but ultimately denied the motion on October 15, 2009. Marrero later decided to change his plea and pleaded no contest to all the charges in the indictment. The trial court sentenced him to a total of three years in prison.

*State v. Marrero*, No. 10-CA-9867, 2011 WL 3273582, *2 (Ohio App. Ct. Aug. 1, 2011)

("*Marrero I*").

2

B.     **Direct Appeal**

In August 2010, Petitioner, through counsel, filed a notice of appeal in the state appellate court.  (Doc. No. 19-1 at Ex. 20.)  He raised the following assignments of error:

> I.     The Court erred when it denied the initial Motion to Suppress evidence found in Defendant's duffel bag.
>
> II.    The Court erred when it found that Defendant's statements were admissible.

(*Id*.)  On August 1, 2011, the state appellate court affirmed Petitioner's conviction.  *See Marrero*, 2011 WL 3273582.   On October 19, 2011, Petitioner, through counsel, filed an untimely notice of appeal in the Ohio Supreme Court, as well as a motion for a delayed appeal.  (Doc. No. 19-1 at Exs. 23, 24.)  On November 30, 2011, the Ohio Supreme Court denied Petitioner's motion for a delayed appeal and dismissed his appeal.  *See State v. Marrero*, 957 N.E.2d 1167 (Table), 130 Ohio St.3d 1474 (Ohio 2011).

C.     **Rule 26(B) Application**

On October 28, 2011, Petitioner, through counsel, filed an application to reopen his appeal pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure.  (Doc. No. 19-1 at Ex. 26.)  Marrero argued that his appellate counsel was ineffective in failing to raise the following assignments of error on direct appeal:

> I.     Appellant's conviction is tainted by structural error because the criminal case was assigned to the same judge who issued the search warrants for the evidence used to indict Appellant, thereby depriving Appellant of his right to Due Process under the U.S. and Ohio Constitutions.

3

> II.    The trial court's refusal to disqualify the Lorain County
>        Prosecutor's Office was prejudicial error because the
>        prosecutors handling Marrero's case were present
>        during his arrest and were direct witnesses to the
>        drug raid.

(*Id*.)

On December 29, 2011, the state appellate court denied Petitioner's application.

(Doc. No. 19-1 at Ex. 28.)  Petitioner did not appeal this denial to the Ohio Supreme

Court.

**D.    Motion to Withdraw Plea**

On May 9, 2012, Petitioner, *pro se*, filed in the state trial court a motion to

withdraw his no-contest plea, in which he alleged that his no-contest plea was

involuntary for numerous reasons, including ineffective assistance of counsel and

prosecutorial and judicial misconduct. (Doc. No. 19-1 at Ex. 29.)  The trial court denied

the motion on May 11, 2012.  (Doc. No. 19-1 at Ex. 30.)  On June 12, 2012, Petitioner

filed a notice of appeal in the state appellate court.  (Doc. No. 19-1 at Ex. 31.)  On July

9, 2012, the state appellate court dismissed Petitioner's appeal as untimely filed.  (Doc.

No. 19-1 at Ex. 32.)

**E.    Petition for Post-Conviction Relief**

On August 10, 2012, Petitioner, *pro se*, filed a petition for post-conviction relief

pursuant to Ohio Revised Code § 2953.21. (Doc. No. 19-1 at Ex. 40.)  In the motion,

Marrero raised the following arguments:

> I.    My 5th and 14th Amendment rights guaranteed by the
>       Constitution were violated by the trial judge.  Judge
>       Miraldi, knowingly and partially sat in on my case
>       depriving me of Due Process of Law and Equal

4

Protections of the Laws.  this was an abuse of the trial judges [*sic*] discretion, and his jurisdiction was incompetent because the judge lacked personal jurisdiction to adjudicate my rights.  This judge's rulings and judgments were null and void because his authority was of an incompetent jurisdiction.

II.  My 5th and 14th Amendment rights guaranteed by the Constitution were violated by the Lorain County Prosecutor's Office and Lorain City Police Department, along with the Lorain Police Detectives (A.J. Mathewson and Tom Nimon).  The county prosecutor's office and the Lorain Police Detectives utilized illegal techniques and investigative practices to prejudice my hearings with fabricated and perjured testimony that caused a fundamentally unfair outcome in the proceedings and caused damage to my "critical stage" hearings throughout my proceedings.  Prosecutor must correct false testimony provided by state's police witnesses and provide all exculpatory evidence that may be material to innocence, guilt, or punishment.   (Brady vs Maryland) (Bagley vs United States), Criminal Rule 16(A)(B), and Ohio Rule of Professional Conduct (special Responsibilities of a prosecutor).

III.  There was ineffective assistance of counsel throughout my proceedings, but especially during my 18th of December, 2008, suppression hearing, because my originally appointed counsel was improperly discharged because of a "conflict of interest."  This caused me irreparable harm because my co-defendant hired him (Kenny Lieux) but did not pay him any money.  Ineffective assistance of counsel plagued the rest of my proceedings, including and especially my direct appeal.  This was a violation of my 6th Amendment, 5th Amendment, and 14th Amendment rights because all of my attorneys [*sic*] representation, except for my first attorney, John Prusak, fell below and [*sic*] objective standard of reasonableness, and that counsel's deficient performance prejudiced the defendant, resulting in and [*sic*] unreliable or fundamentally unfair outcome in the proceedings, manifest injustice, and a miscarriage of justice.  All of the following attorney

5

(except John Prusak), were ineffective assistance of counsel because; none performed within the range of competence demanded of an attorney in a criminal case such as my case at hand; and there is a reasonable probability exists that I, the Defendant, would not have pleaded "no contest" had counsel been competent.  Strickland vs. Washington 466 US 668, 691 (1984).  Also, a "no contest plea" should be set aside as involuntarily made because I, the Defendant, will and can establish prejudice resulting from judicial misconduct, prosecutorial misconduct, and ineffective assistance of counsel.

IV.     My 5th and 14th Amendments of the Constitution has [*sic*] been violated because the trial court's docket sheet and trial transcripts were altered, edited, and erased to conceal discriminatory, prejudicial, and beneficial evidence and information.  These actions and the results would deprive me, the Defendant, proper "Due Process" and "Equal Protections" because the trial court, along with the Prosecutor's Office, have tried to conceal their unethical, illegal, and morally substandard acts and actions from being exposed.

(*Id*.)

On August 27, 2012, the trial court denied the § 2953.21 petition as untimely filed.  (Doc. No. 19-2 at Ex. 42.)  Petitioner filed a notice of appeal in the state appellate court.  (Doc. No. 19-2 at Ex. 43.)  On February 18, 2014, the state appellate court affirmed the trial court's decision.  *State v. Marrero*, NO. 12-CA-10282, 2014 WL 644354 (Ohio App. Ct. Feb. 18, 2014) ("*Marrero II*").  Petitioner did not file a timely notice of appeal to the Ohio Supreme Court, which, pursuant to that court's rules, was due on April 4, 2014.

**F.      Proceedings in this Court**

On January 28, 2013, Petitioner filed his habeas petition in the United States

6

District Court for the Southern District of Ohio.  (Doc. No. 2.)  The certificate of service that accompanies the § 2254 petition reflects that Petitioner gave the petition to prison officials for mailing on January 21, 2013.  (Doc. No. 2 at Page ID# 27.)  On January 30, 2013, the Southern District transferred the case to this Court.  (Doc. No. 3.)  In his petition, Marrero asserts the following five grounds for relief (grammar and punctuation as in original):

I.      Incompetent Jurisdictional Claim because the trial judge (Miraldi) was part of the investigation, acted as legal advisor for the police, signed more than 7 warrants (Wiretap and Home Search Warrants), and judge did not satisfy 5th and 14th Amendments of Due Process "Fundamental Fairness" impartiality.

      Supporting Facts: An impartial adjudicator is mandatory within all proceedings to render valid and competent judgment, orders, and decisions. Structure errors are never considered harmless.  The framework of the proceedings was tainted, and the Defendant did try to disqualify the Judge, but was met with trickery and misconduct by Judge, Prosecutors, and my own court appointed attorneys (Judge Miraldi appointed attorneys), in which, I was tricked in pleading no-contest when I was getting close to exposing the unconstitutional and illegal conduct that voids the defective search warrant, exposes the prosecutorial misconduct, and exposes the manifest injustice and miscarriage of justice being dealt by this Common Pleas Court and Judge.  I was bullied out of court.  (See Transcripts).

II.     Prosecutorial Misconduct that warrants a reversal because the prosecutors used false and staged evidence in their "case in chief."

      Supporting Facts: The Lorain County Prosecutor's Office violated my 5th and 14 Amendments (Due Process and Equal Protections) by using unconstitutional practices to prejudice my case because of their personal and intimate involvement

7

within my investigation, and the actual execution of the premises search warrant where MY 4th Amendment Right was violated.  The Prosecutor's Office then utilized and staged false and fabricated perjurized testimonial within the case in chief [*sic*], knowing it to be false and misleading resulting in an unreliable outcome in the proceeding.  The Prosecutor's Office also intentionally withheld exculpatory evidence that is material to innocense, guilt, or punishment (Brady vs Maryland) (Bagley vs United States), Criminal Rule 16(A)(B), and Rules of Professional Conduct/Special Responsibilities of a Prosecutor/Candor towards the Tribunal.

III.     Ineffective Assistance of Counsel (Trial and Appellate)

      <u>Supporting Facts</u>: I can or could argue the 4 or 5 attorneys that represented me were ineffective and uncompetent [*sic*] because this case is quite easy to defect and defend, but I will focus on the <u>two</u> <u>most</u> deficient and incompetent attorneys that caused the most prejudice to me and my case.  1st- Kenny Lieux handled my 4th Amendment Supp. of Evidence Hearing on the 18th Dec., 2008, in which, he filed an incompetent motion (See Motion), and performed even more lackluster within the actual hearing itself, damaging the factfinding process and did not place a meaningful testing on the state's case.  2nd- Erin Downs, my Direct Appeal attorney botches my appeal, and ignores my objectives, causing me to be incarcerated on an illegal search and seizure.  Both were deficient/unreasonable and incompetent, prejudicing me and my Due Process/Equal Protections.

IV.     Trial Transcripts and Trial Docket edited, altered, and deleted to cover up violations and misconduct (Judicial, Prosecutorial, and Defense attorney misconduct).

      <u>Supporting Facts</u>: My 5th and 14th Amendment Due Process and "Equal Protections" has [*sic*]  been violated because the trial court docket and trial transcripts were altered, edited and erased to conceal

discriminatory, prejudicial, and exculpatory statements and information.  The acts and actions would deprive me, the Petitioner, proper review and Equal Protections because the missing information was reversable [*sic*] "plain error" and "prejudicial structural error" evidence.  This was a violation of upon the "Full Faith and Credit Statute and Clause" which is located in 28 U.S.C.A. Section 1738, which provides the means by which the "records and judicial proceedings of any State or Territory of the United States shall be proven and admitted in other courts within the United States, so authenticated, shall have the same full faith and credit from which they are taken.  Ohio Appellate Rule 9, 10, 11, states that the record(s) need to be complete and should be gathered up by appellate counsel.  This did not occur in my case.

V.      4th Amendment Search Warrant Procurement defects and violations that nullify or void the premises (home) Seach Warrant, in which, was used to violate the Petitioner's 4th Amendment Right to be free from unreasonable searches and seizures except upon probable cause.  The 4th Amendment Suppr. Hearing had (on the 18th Dec, 2008) was not litigated fully and fairly, prejudicing the Defendant-Petitioner, causing him to illegally and unconstitutionally [be] detained, sentenced, and convicted to state prison without "probable cause," or a warrant with his name, or particular facts or information that would give rise to reasonable suspicion.

Supporting Facts: On the 16th of January, 2008, the Lorain Police and the Lorain County Prosecutor's Office entered the home of the Petition[er]'s uncle, and executed a search of his uncle's home with a defective Search Warrant that did not contain the Petitioner's name or any particularized facts or information that would lead the county prosecutors or the police officers searching, to the conclusion or probable cause to cut open the Petitioner's clearly (exterior) name tagged luggage with bolt cutters.  The warrant itself, was void for a number of 4th Amendment- Crim. Rule 41 defects that renders the warrant fatally flawed.  The most obvious was that the

> warrant was procured with 2 month old stale information that did not amount to probable cause to authorize the warrant in the first place. Also, not least, it was not signed by a "neutral and detached" magistrate or judge, which is not optional. Plus, the Lorain Police Officer that swore and averred to obtain this warrant, admitted in open court that he utilized reckless falsities and untrue information to obtain this particular warrant that was used to violate the Petitioner, Tito E. Marrero's 4th Rights, which, in turn, violated the Petitioner's 5th, 8th, 6th, and 14th Amendments of the United States Constitution.

(Doc. No. 2.)

Thereafter, the State filed its Answer/Return of Writ, in which it argues that Petitioner failed to file his § 2254 petition within the relevant time period and, thus, the petition should be dismissed as untimely. (Doc. No. 19.) The State also addresses the procedural deficiencies and merits of the grounds for relief. In October 2013, the undersigned stayed proceedings in this case until Petitioner completed proceedings related to his August 2010 state court post-conviction petition. (Doc. No. 27.) In March 2014, Petitioner filed an "addendum" to his petition. (Doc. No. 38.) In April 2014, the State notified the undersigned that the state appellate court had affirmed the judgment of the state trial court with respect to Petitioner's § 2953.21 petition, and that the time within which Petitioner could appeal that decision to the Ohio Supreme Court had expired on April 4, 2014. (Doc. No. 41.)

## II. Jurisdiction

A state prisoner may file a § 2254 petition in "the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him." 28 U.S.C. § 2241(d). The

10

Court of Common Pleas of Lorain County, Ohio sentenced Petitioner.  (Doc. No. 19-1 at Ex. 1.)  Lorain County is within this Court's geographic jurisdiction.  *See* 28 U.S.C. § 115(a).  Accordingly, this Court has jurisdiction over Marrero's § 2254 petition.

### III.  Procedural Issues

**A.** **Timeliness**

In the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996), Congress enacted a period of limitations for the filing of habeas petitions.  The statute provides, in relevant part:

> (d)(1) A one year period of limitations shall apply to the filing of an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> * * *
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1) & (2).

Here, the State argues that, even accounting for tolling in this case, Petitioner's one-year period for filing his habeas petition expired on November 29, 2012, which is 53 days before he filed his habeas petition in federal court.[1]  The State, however, may not be

---

[1] The record reflects that Petitioner has been released from the state correctional facility.  (Doc. No. 18.)  Petitioner's sentence, however, included a mandatory five-year term of post-release control.  (Doc. No. 19-1 at Ex. 1.)  An offender search on the web

correct.

The state appellate court affirmed Petitioner's conviction on August 1, 2011.  *See*

*Marrero*, 2011 WL 3273582.  Rule 7.01(A)(1)(a) of the Rules of Practice for the Supreme

Court of Ohio required Petitioner to file a notice of appeal in the Ohio Supreme Court

within 45 days of that decision – by or on Monday, September 15, 2011.  Petitioner did

not file a notice of appeal in the Ohio Supreme Court.  Accordingly, his conviction became

final, for the purposes of the AEDPA statute of limitations, on September 15, 2011, and

his one-year period of limitations began to run on the next day, September 16, 2011.  *See*

*Gonzales v. Thaler*, ___ U.S. ___, 132 S. Ct. 641, 653-54 (2012).  ("For petitioners who

pursue direct review all the way to this Court, the judgment becomes final . . . when this

Court affirms a conviction on the merits or denies a petitioner for *certiorari*.  For all other

petitioners, the judgment becomes final . . . when the time for pursuing direct review in

this Court, or in the state court, expires.  We thus agree with the Court of Appeals that

because Gonzales did not appeal the State's highest court, his judgment became final

when his time for seeking review with the State's highest court expired.").  Thus,

Petitioner's one-year statute of limitations expired one year later on Saturday, September

15, 2012.  *See* Fed. R. Civ. P. 6(a)(1)(A) ("[E]xclude the day of the act, event or default

_____

site for Ohio's Department of Rehabilitation and Correction, however, reflects that
Petitioner is currently under parole supervision.  *See* Offender Search for Marrero, Tito
at http://www.drc.ohio.gov/OffenderSearch.  Accordingly, because Petitioner continues
to experience "collateral consequences" of his sentence, his release from prison does
not defeat this Court's jurisdiction over his petition.  *Carafas v. LaVallee*, 391 U.S. 234,
238 (1968).

that begins the period."). Petitioner did not file his petition until January 21, 2013.[2]  Thus, the petition is time barred unless statutory tolling sufficiently extends the period of limitations in this case.

Under 28 U.S.C. § 2244(d)(2), a "properly filed" application for state post-conviction or other relief tolls the running of the AEDPA statute of limitations until the state supreme court decides the case or declines review.  Here, the State correctly concedes that Petitioner's one-year period was tolled during the pendency of his: (1) motion for a delayed appeal; (2) Rule 26(B) Application; and (3) motion to withdraw his guilty plea, filed May 9, 2012 and denied on May 11, 2012.  The effect of these filings, in the context of tolling Petitioner's one-year period, is as follows:

| Relevant Dates/Events | Period Tolled | Time Line for Statute of Limitations | Days Expended |
|---|---|---|---|
| August 1, 2011 (the date on which the state appellate court affirmed Marrero's conviction and sentence) plus 45 days for the expiration of time within which to appeal equals September 15, 2011, the date on which Marrero's conviction became final | | Time begins to run on September 16, 2011, and continues to run until October 18, 2011 | 33 days |

---

[2] Under *Houston v. Lack*, 487 U.S. 266, 271-72 (1988), Petitioner's habeas petition is deemed filed as of the date that he delivered it to prison officials for mailing.

| Relevant Dates/Events | Period Tolled | Time Line for Statute of Limitations | Days Expended |
|---|---|---|---|
| October 19, 2011, the day on which Marrero filed his motion for a delayed appeal, to December 29, 2011, the date on which the state appellate court denied Marrero's Rule 26(B) application (filed while his motion for a delayed appeal was still pending), plus 45 days for appeal, i.e. until February 12, 2012 | October 19, 2011 to February 12, 2012 | Time begins to run on February 13, 2012 and runs until May 8, 2012 | 84 additional days |
| May 9, 2012, when Marrero filed his motion to withdraw his no-contest plea, to May 11, 2012, the date on which the state trial court denied the motion, plus 30 days to appeal to the state appellate court, i.e. until June 10, 2012 | May 9, 2012 to June 10, 2012 | Time begins to run on June 11, 2012 and runs until January 20, 2013 | 224 additional days |
| January 21, 2013, the date on which Marrero filed his § 2254 petition | | | **341 total days expended** |

The calculation above differs from the State's calculation in two ways.  With respect to the effect of Marrero's Rule 26(B) application, the State's calculation does not include the 45-day period during which Marrero could have appealed the state appellate court's denial to the Ohio Supreme Court.  While not clearly established, authority in this Circuit suggests that a petitioner's one-year period of time is tolled during the period of time during which he may appeal a state appellate court's decision to the Ohio Supreme

14

Court, regardless of whether he does so.  *See, e.g., Applegarth v. Warden*, 377 F. App'x 448, 449 (6th Cir. 2010); *Nunez v. Coleman*, No. 1:12-CV-903, 2014 WL 809206, *3, n.10 (N.D. Ohio Feb. 25,2014) (Lioi, J.).  Accordingly, the undersigned's calculation of the statute of limitations in this case includes the 45-day period during which Marrero was able to file a notice of appeal from the state appellate court decision denying his Rule 26(B) application.

Similarly, the State's calculation does not include the 30-day period during which Marrero could have filed a notice of appeal from the trial court's denial of his motion to withdraw his no-contest plea.  *See* Ohio R. App. P. 4(A).   It is not clear whether the reasoning of *Applegarth* and *Nunez*, which involved motions for leave to file delayed appeals that were denied by the state appellate courts, requires this Court to toll Marrero's one-year period by the amount of time within which he could have appealed the state trial court's denial of his motion to withdraw his plea.  Because this is an open question, the undersigned's calculation includes the 30-day period in the amount of time that Petitioner's one-year period was tolled.  Tolling the period of limitations by these additional periods of time results in Marrero's petition being timely.  Accordingly, the undersigned recommends that this Court decline to dismiss the petition as untimely, and decide the petition as if it were timely filed.

**B.    Non-Cognizable Claims**

In his fifth ground for relief, Petitioner contends that the search warrant authorizing the search of his uncle's home, and which led to the discovery of cocaine in Petitioner's duffel bag, did not satisfy the requirements of the Fourth Amendment, for various

15

reasons.   It is well established that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence [used against him was] obtained in an unconstitutional search or seizure."  *Stone v. Powell*, 428 U.S. 465, 495 (1976); *see Lawrence v. 48th Dist. Court*, 560 F.3d 475, 483, n.7 (6th Cir. 2009) ("Ordinarily, we do not recognize Fourth Amendment claims in Section 2254 actions if the state proceedings provided the petitioner a full and fair opportunity to litigate that claim.").  Courts conduct a two-part inquiry to determine whether a habeas petitioner received a full and fair opportunity to litigate a Fourth Amendment claim, asking, first, "whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim," and, second, "whether presentation of that claim was in fact frustrated because of a failure of that mechanism."  *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982).

In this case, with respect to the first prong of the inquiry, there is no dispute that Ohio's Criminal Rule 12 "provides an adequate opportunity to raise fourth amendment claims in the context of a pretrial motion to suppress."  *Riley*, 674 F.2d at 526.  With respect to the second prong of the inquiry, the record reveals that Marrero filed two motions to suppress under Rule 12 of the Ohio Rules of Criminal Procedure, that the trial court held a hearing on each motion, and that the state appellate court reviewed Marrero's Fourth Amendment claims.  Accordingly, Marrero received a full and fair opportunity to litigate his claims in state court.  Although Petitioner contends that he was deprived of the opportunity to fully and fairly litigate his Fourth Amendment claims, he does not explain how.  In light of the fact that the record reflects that the state courts fully considered Petitioner's claims under the Fourth Amendment, his conclusory assertion to

16

the contrary is not sufficient to merit review of his claim by this Court.  Marrero's fifth

ground for relief should be dismissed as non-cognizable on habeas review.

## C.     Exhaustion and Procedural Default

A state prisoner must exhaust all available state remedies or have no remaining

state remedies available prior to seeking review of a conviction via federal habeas corpus.

*See* 28 U.S.C. § 2254(b) and (c); *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins*

*v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain

available, the petitioner has not exhausted his state remedies, and a federal court must

dismiss his petition.  *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  The exhaustion

requirement is properly satisfied when the highest court in the state in which petitioner

was convicted has been given a full and fair opportunity to rule on all the petitioner's

claims.  *See Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

Similarly, a federal court may not review  "contentions of federal law . . .  not

resolved on the merits in the state proceeding due to respondent's failure to raise them

there as required by state procedure."  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

When a petitioner "has defaulted his federal claims in state court pursuant to an

independent and adequate state procedural rule, federal habeas review of the claims is

barred unless the prisoner can demonstrate cause for the default and actual prejudice as

a result of the alleged violation of federal law, or demonstrate that failure to consider the

claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501

U.S. 722, 750 (1991).; *see also See Gray v. Netherland*, 518 U.S. 152, 162 (1996).  If the

State argues that a petitioner has procedurally defaulted, the Court must conduct a four-

17

step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

As a general principle, this Court can dismiss a habeas petition without prejudice to allow the petitioner to return to state court to pursue his available remedies. *See* 28 U.S.C. § 2254(c); *Rose v. Lundy*, 455 U.S. 509 (1982). However, if there are no longer any state court remedies still available to Petitioner with respect to an unexhausted claim, this Court may deem the claim procedurally defaulted. *See Gray*, 518 U.S. at 161-62 ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' *Engle v. Isaac*, 456 U.S. 107, 125, n.28 (1982), it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law,' *Castille*[, 489 U.S. at 351].").

Here, the State argues that, with the exception of the portion of his third ground for

18

relief that alleges ineffective assistance of appellate counsel, each of Petitioner's remaining grounds for relief is procedurally defaulted.[3]

In his first ground for relief, Petitioner contends that the state trial court judge engaged in various types of misconduct, including bias and lack of "personal jurisdiction." In his second ground for relief, he alleges that the prosecutors used "false and staged evidence" against him at trial, and were improperly involved in the investigation that led to his arrest.  In one portion of his third ground for relief, Petitioner alleges that his trial counsel was ineffective in failing to obtain the suppression of the evidence against Petitioner.  In his fourth ground for relief, Marrero contends that the transcripts and dockets related to this state criminal proceedings have been altered and edited.  Marrero raised these grounds for relief in his state court petition for post-conviction relief.  The state trial court denied the petition on the basis that it was not timely filed and Petitioner had failed to demonstrate that any of the exceptions to the time requirement of Ohio Rev.

---

[3] The State also argues that Marrero's no-contest plea precludes federal habeas review of any issue other than the voluntary and knowing nature of his plea.  This argument is incorrect.  A habeas petitioner's *guilty* plea "bars any subsequent non-jurisdictional attack on the conviction," *Werth v. Bell*, 692 F.3d 486, 495 (6th Cir. 2012) (internal quotation marks omitted), because "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea," *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  Under Ohio law, however, a no-contest plea "is not an admission of guilt, but rather, a stipulation that the court may make a finding of guilt from the explanation of circumstances provided to the court.  There is a fundamental difference between pleading guilty and pleading no contest, because a guilty plea constitutes an actual admission of guilt, whereas a plea of no contest requires the trial court to make a finding of guilt based on some type of evidence." *State v. Russell*, No. 09MA156, 2011 WL 861910, *3 (Ohio App. Ct. March 9, 2011). Accordingly, it is not clear that Marrero's no-contest plea precludes the federal habeas review of his grounds for relief, and the State has supplied no pertinent authority supporting its allegation.

Code 2953.21 applied to excuse the untimeliness. The state appellate court affirmed the trial court decision, finding that, "[b]ecause Marrero's petition was untimely and did not comply with the requirements of [Ohio Rev. Code] 2953.23(A)(1), the trial court lacked the authority to consider his petition for post-conviction relief." *Marrero II*, 2014 WL 644354 at *4.

Petitioner does not dispute that his post-conviction petition was untimely. The state appellate court decision reflects that the court relied on the time requirement to decline to review Petitioner's claim on their merits. Accordingly, the first and second elements of *Maupin* are satisfied. Finally, Ohio's timeliness requirements in post-conviction proceedings constitute an independent and adequate state ground for declining to review the merits of a petitioner's claims. *Townsend v. Gansheimer*, No. 1:08-CV-1089, 2009 WL 589332, * 7 (N.D. Ohio March 9, 2009) (adopting the report and recommendation of Perelman, M.J.). Marrero's petition can be liberally construed to argue that his appellate counsel's failure to raise these issues on direct appeal constitutes cause for his procedural default. Ineffective assistance of counsel, however, may only serve as cause for procedural default where the petitioner has asserted that ineffective assistance an independent claim in state court. *See Murray v. Carrier*, 477 U.S. 477, 488-89 (1986).

Petitioner raised his first (judicial misconduct) and second (prosecutorial misconduct) grounds for relief as bases for alleging ineffective assistance of appellate counsel in his Rule 26(B) Application. As discussed in Section IV(B), *supra*, however, there is no basis to conclude that his appellate counsel was ineffective in this case. Accordingly, the alleged ineffective assistance of Petitioner's appellate counsel cannot

20

excuse the procedural default of his first and second grounds for relief.  Further,

Petitioner did not assert in state court that his appellate counsel was ineffective in failing

to argue either that Petitioner's trial counsel was ineffective or that the transcripts and

dockets in his proceedings had been altered or edited.  Thus, Petitioner cannot rely on his

appellate counsel's alleged ineffective assistance to excuse the procedural default of his

ineffective assistance of trial counsel claims or his claim that someone edited and altered

his transcripts and dockets.   For the foregoing reasons, Petitioner's first, second and

fourth grounds for relief, as well as the portion of his third ground for relief asserting

ineffective assistance of trial counsel, are procedurally defaulted and barred from habeas

review.

### IV.   Merits of Petitioner's Remaining Claim

**A.     Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ( "AEDPA") altered the

standard of review that a federal court must apply when deciding whether to grant a writ

of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless
> the adjudication of the claim resulted in a decision that was
> contrary to, or involved an unreasonable application of,
> clearly established Federal law, as determined by the
> Supreme Court of the United States; or resulted in a
> decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State
> court proceeding.

A writ of habeas corpus may issue only if the state court's decision is contrary to clearly

established federal law or was based on an unreasonable determination of the facts in light of the evidence. *See Carey v. Musladin*, 549 U.S. 70 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000). Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction. *See Carey*, 549 U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court). A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result. *Id.* at 405-06. A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been

22

objectively unreasonable." *Id*. at 520-21 (internal citations and quotation marks omitted).
This Court applies this deferential standard of review to the state courts' rulings on
Petitioner's grounds for relief.

**B.    Ineffective Assistance of Appellate Counsel**

In assessing claims of ineffective assistance of counsel, courts apply the familiar
standard of *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a petitioner to
demonstrate both that his counsel's performance was deficient, and that the allegedly
ineffective assistance caused him prejudice*:*

> A convicted defendant's claim that counsel's assistance was
> so defective as to require reversal of a conviction or death
> sentence has two components. First, the defendant must
> show that counsel's performance was deficient. This
> requires showing that counsel made errors so serious that
> counsel was not functioning as the "counsel" guaranteed the
> defendant by the Sixth Amendment. Second, the defendant
> must show that the deficient performance prejudiced the
> defense. This requires showing that counsel's errors were so
> serious as to deprive the defendant of a fair trial, a trial
> whose result is reliable. Unless a defendant makes both
> showings, it cannot be said that the conviction or death
> sentence resulted from a breakdown in the adversary
> process that renders the result unreliable.

*Strickland*, 466 U.S. at 687.  This standard applies "regardless of whether a [p]etitioner is
claiming ineffective assistance of trial counsel or ineffective assistance of appellate
counsel."  *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005).

Where, as here, a state court correctly identifies *Strickland* as the standard for
assessing a petitioner's ineffective assistance claim, in order for the petitioner to receive
habeas relief, the state court's ruling must be an unreasonable application of the
*Strickland* standard.  *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) ("The question is

23

not whether a federal court believes the state court's determination under *Strickland* was incorrect but whether that determination was unreasonable – a substantially higher threshold.") (internal quotation marks omitted).  Because the performance and prejudice components of the *Strickland* test are mixed questions of law and fact, they are subject to *de novo* review by a habeas court.  *Carter v. Bell*, 218 F.3d 581, 591 (6th Cir. 2000). Federal habeas courts, however, must also employ "a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, ____ U.S. ____, 134 S. Ct. 10, 13 (2013); *see also Cullen v. Pinholster*, ____ U.S. ____, 131 S. Ct. 1388, 1403 (2011) ("Our review of the [state court's] decision is thus doubly deferential.  We take a highly deferential look at counsel's performance through the deferential lens of § 2254(d).") (internal citations and quotation marks omitted).

### 1.     Judicial Misconduct

Petitioner argues that his appellate counsel was ineffective in failing to argue on direct appeal that the trial court judge was biased and that this bias permeated Petitioner's trial.  The state appellate court determined that this claim lacked merit and, thus, Petitioner could not demonstrate that he was prejudiced by its omission from his direct appeal.  (Doc. No. 19-1 at Ex. 28.)

Other than making the conclusory assertion that the state trial court judge was biased against him, and noting that the judge had signed search warrants in the investigation that led to his arrest, Marrero points to nothing in the record to support his claim that the state trial court judge should have disqualified himself from presiding over Marrero's criminal proceedings.  Under Ohio law, "the Chief Justice of the Ohio Supreme

Court, or her designee, has exclusive jurisdiction to determine a claim that a common pleas court judge is biased or prejudiced." *Shih v. Byron*, No. 25319, 2011 WL 2348315, *7 (Ohio App. Ct. June 8, 2011). Where an "appellant believed that the trial judge was biased or prejudiced at any stage of the proceedings, his remedy would have been to file an affidavit of interest, bias, prejudice or disqualification with the clerk of the Ohio Supreme Court." *Id*. (internal quotation marks omitted). Under Ohio law, an appellate court has no jurisdiction to determine judicial bias. *Id*. Accordingly, any argument on direct appeal based on the alleged bias of the state trial court judge could not have been considered by the appellate court and would have failed. Petitioner cannot show either that his appellate counsel's decision to omit this argument constituted deficient performance, or that he was prejudiced by the omission.

### 2. Prosecutorial Misconduct

Marrero argues that his appellate counsel was ineffective in failing to argue on direct appeal that the trial court erred in declining to disqualify the Lorain County prosecutors who were present at the time that he was arrested. In denying his Rule 26(B) Application, the appellate court noted that the State had "asserted that the prosecutors who responded to the crime scene were not the same prosecutors who tried this matter and did not testify at trial." (Doc. No. 19-1 at Ex. 28.) The state court concluded that, as a result, Marrero could not demonstrate that he was prejudiced by this omission on direct appeal.

Marrero fails to point to any evidence that the state appellate court incorrectly determined that the prosecutors who witnessed Marrero's arrest were not the same

prosecutors who tried his case.  Nothing in the record suggests that the state court made an erroneous factual determination.  There is no legal authority that requires the disqualification of an entire prosecuting attorney's office merely because some of its members may have witnessed events relevant to a criminal prosecution.  Absent some actual evidence that he was prejudiced by the fact that members of the Lorain County Prosecutor's Office witnessed his arrest,  this argument would not have succeeded on appeal.  Accordingly, Petitioner cannot show either that his appellate counsel's decision to omit this argument constituted deficient performance, or that he was prejudiced by the omission**.**

## V.  Conclusion

For the reasons given above, the § 2254 petition should be dismissed.


Date: June 10, 2014                                       s/ *Nancy A. Vecchiarelli*
                                                          NANCY A. VECCHIARELLI
                                                          U.S. MAGISTRATE JUDGE